IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| STEPHEN COOPER, | )<br>) |
| Plaintiff, | )  2:24-CV-01213-MJH<br>) |
| vs. | )<br>) |
| FAYETTE COUNTY, MICHAEL AUBELE, | )<br>)<br>) |
| Defendants, | |

## OPINION

On August 26, 2024, Plaintiff, Stephen Cooper, filed the present action against Defendants Fayette County and Michael Aubele. (ECF No. 1). On March 21, 2025, Plaintiff filed a Second Amended Complaint against Defendants, alleging First Amendment retaliation claims under 42 U.S.C. § 1983, Counts I and II, and age discrimination claims under the Age Discrimination in Employment Act ("ADEA"), Count III, and claims under the Pennsylvania Human Rights Act ("PHRA"), Count IV. (ECF No. 21).[1] On April 9, 2025, Defendants filed a Motion to Dismiss and accompanying brief. (ECF Nos. 24 & 25). On April 30, 2025, Plaintiff filed his Brief in Opposition. (ECF No. 28). Defendants did not file a Reply. For the reasons below, Defendants' Motion to Dismiss will be granted in part and denied in part.

**I.     Statement of Facts**

---

[1] Plaintiff indicated in his Brief in Opposition that he is withdrawing his ADEA and PHRA claims, Counts III and IV, against Defendants. *See* (ECF No. 28, at 6). Accordingly, Counts III and IV will be dismissed.

1

Plaintiff, Stephen Cooper, was employed by Fayette County as Chief County Detective. (ECF No. 21, at ¶ 12). In 2023, Defendant, Michael Abuele, ran against the sitting District Attorney, Richard Bower for Fayette County District Attorney. (*Id.* ¶ 14). Plaintiff supported District Attorney Bower during the primary election. (*Id.* ¶ 16). After Mr. Aubele won in the primary election, Plaintiff refused to support Mr. Aubele in the general election. (*Id.*). Plaintiff alleges that Mr. Aubele was aware of Plaintiff's refusal to support his campaign. (*Id.* ¶ 17). On January 1, 2024, Mr. Aubele was sworn in as Fayette County District Attorney. (*Id.* ¶ 21). Plaintiff alleges that, shortly after Mr. Aubele was sworn in, Plaintiff was informed that he would be terminated from his position as Chief County Detective. (*Id.* ¶ 22). On March 11, 2024, Plaintiff's counsel sent Defendants a letter, indicating Plaintiff's intention to file a lawsuit against Defendants. (*Id.* ¶ 30). The litigation hold letter stated:

> Please be advised that I have been retained to represent Mr. Stephen Cooper in connection with his employment. My preliminary investigation of the matter indicates that facts exist which suggest that my client's civil rights, as guaranteed under federal and state law, may have been violated. Accordingly, you are advised to put a litigation hold on all evidence of whatsoever type or kind related in any way to Mr. Cooper's employment and the conduct described herein.

(ECF No. 21-1).

On March 29, 2024, Plaintiff was terminated. (ECF No. 21, at ¶ 31). On April 1, 2024, Plaintiff was hired as a deputy sheriff by the Fayette County Sheriff's Office. (*Id.* ¶ 39). The Fayette County Sheriff's Office requires its deputies to be certified with the Municipal Police Officers' Education and Training Commission ("MPOTEC"). (*Id.* ¶ 40). Plaintiff alleges that Fayette County maintains a roster through the Fayette County Bureau of Investigations that contains officers' MPOTEC data and certifications ("the Roster"). (*Id.* ¶ 41). Plaintiff alleges that he provided the administrator for Fayette County Bureau of Investigations with his MPOETC information to update the Roster. (*Id.* ¶ 44).

Plaintiff alleges that, on January 1, 2025, he discovered that his MPOETC information on the Roster was never updated and that he had been removed from the Roster on March 29, 2024, the day of his termination. (*Id.* ¶ 46). Plaintiff alleges that despite multiple requests for his MPOETC information to be updated, he continues to be excluded from the Roster. (*Id.* ¶¶ 50-51). Plaintiff alleges that Mr. Aubele, in his position as a final decision maker for Fayette County, terminated Plaintiff and removed him from the Roster. In Count II, Plaintiff alleges that his removal from the Roster was in retaliation for the litigation hold letter sent by Plaintiff's counsel, and because Plaintiff did not support Mr. Aubele as District Attorney. (*Id.* ¶¶ 24, 49-53).

## II.   Relevant Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir.

3

2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

### III.    Discussion

Plaintiff brings two First Amendment retaliation claims against Defendants at Counts I and II of the Second Amended Complaint. (ECF No. 21, at 8-11). At Count I, Plaintiff alleges that he was terminated and withheld from the Roster in retaliation for his support for Defendant Aubele's opponent during the election for Fayette County District Attorney. At Count II, Plaintiff alleges that he was retaliated against because his attorney sent Defendant Aubele the litigation hold letter, communicating Plaintiff's intention to file a lawsuit against Defendants.

In their Motion to Dismiss, Defendants argue that Plaintiff's claims against Defendant Aubele in his official capacity are redundant and should be dismissed as a matter of law. (ECF No. 25, at 3-4). Defendants further argue that Plaintiff fails to allege facts to establish *Monell* liability for Fayette County as to Plaintiff's First Amendment retaliation claims. (*Id.* at 4-6). Defendants also argue that Plaintiff fails to allege a First Amendment retaliation claim at Count II of the Second Amended Complaint, because Plaintiff does not plead sufficient facts to establish a causal connection between his removal from the Roster and the litigation hold letter sent by his attorney. (*Id.* at 6).

### A. Claims Against Defendant Aubele

As regards Defendant Aubele, Plaintiff concedes that "Defendants are correct in asserting that the personal or individual claims against Defendant Aubele made in the Second Amended Complaint at Counts I and II should be dismissed as to Defendant Aubele only." As regards claims against Defendant Aubele in his official capacity, the Court agrees with the defense that said claims are redundant as to the claims against Defendant Fayette County. Accordingly, the claims against Defendant Aubele, both individually and in his official capacity, will be dismissed. Defendant Aubele will be dismissed as a party.

### B. Municipal Liability

At Counts I and II of the Second Amended Complaint, Plaintiff brings First Amendment retaliation claims against Fayette County. Defendant argues that Plaintiff cannot establish *Monell* liability against Fayette County, because Plaintiff fails to allege sufficient facts that "any County policy or custom [] was either formally approved by a decision maker of that was so widespread as to have the force of law." (ECF No. 25, at 5). Plaintiff argues that he sufficiently pled facts to

5

establish that, Defendant Aubele, in his capacity as District Attorney, acted as a final decision maker for Fayette County when he terminated Plaintiff's employment and removed him from the Roster. (ECF No. 28, at 3-4).

"[M]unicipalities and other local government units [are] ... persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). However, a municipality is not liable to a § 1983 plaintiff under the theory of respondeat superior. *Id.* at 691. ("[A] municipality cannot be held liable [under § 1983] solely because it employs a tortfeasor.") Instead, the Supreme Court has held that "it is [only] when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983." *Id.* at 694; *see also Beck v. City of Pittsburgh*, 89 F. 3d 966, 971 (3rd Cir. 1996). Official government policy "is made when a 'decision maker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Thus, to establish a § 1983 municipal liability claim, a plaintiff must identify the municipal policy or custom that caused the plaintiff's injury. *Bd. of Cnty. Cmm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *see also Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013).

A "policy" is made, "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). A "custom" is present when, "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "Custom stems from policymakers' 'acquiescence in a longstanding

practice or custom which constitutes the 'standard operating procedure' of the local government entity.'" *Wright v. City of Philadelphia*, 685, F. App'x 142, 147 (3d Cir. 2017) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Plaintiff alleges that, as Fayette County District Attorney, Mr. Abuele had final decision-making authority over Plaintiff's position. (ECF No. 21, at ¶ 24). Plaintiff further alleges that "Defendants' decision to terminate him was in retaliation for Plaintiff's support of District Attorney Bower and/or Plaintiff's political opposition to Defendant Aubele in the 2023 primary election and 2023 election." (*Id.* ¶ 24). Plaintiff also alleges that Defendants retaliated against him, because he "chose to pursue his federal and state rights," and that Plaintiff was removed from the Roster at the direction of Mr. Abuele. (*Id.* ¶¶ 49-50). Plaintiff's allegations, at this stage, are sufficient to establish that Mr. Abuele was acting as a final decision maker during Plaintiff's termination and alleged removal from the Roster. As such, Defendant's Motion to Dismiss Plaintiff's claims against Fayette County for failure to establish municipal liability, will be denied.

### C. Count II: Causal Connection

Defendants argue that Plaintiff fails to plead a First Amendment retaliation claim, at Count II, because he does not allege sufficient facts to establish the requisite causal connection between Plaintiff's removal from the Roster and the filing of the present lawsuit. (ECF No. 25, at 6). Plaintiff argues that he has pled facts to establish the requisite causal connection to properly allege a First Amendment retaliation claim. Specifically, Plaintiff alleges that the initiation of this lawsuit is not the operative protected activity; instead, the relevant protected activity is Plaintiff counsel's requested litigation hold. (ECF No. 28, at 5).

To establish a First Amendment retaliation claim, a plaintiff must show that: "(1) the plaintiff participated in activity protected by the First Amendment; (2) the defendant[s] retaliated against the plaintiff in a manner that would be 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights;' and (3) a causal nexus existed between the protected activity and the retaliation." *Kegerise v. Susquehanna Township School District*, 325 F. Supp. 3d 564, 586 (M.D. Pa. 2018). To establish the requisite causal connection, a plaintiff must prove one of two things: "(1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F. 3d 259, 267 (3d Cir. 2007).

As regards Count II, Plaintiff alleges that, on March 11, 2024, Plaintiff's counsel sent a "litigation hold" letter, indicating that he believed his federal rights had been violated. Plaintiff alleges that he was removed from the Roster on March 29, 2024. (*Id.* ¶ 46). This removal from the Roster was eighteen days after his counsel sent the litigation hold letter. At this stage, the eighteen-day temporal proximity between the alleged protected activity and adverse action sufficiently pleads "unusually suggestive" retaliatory conduct. *See Harrison-Harper v. Nike Inc.* 788 Fed. Appx. 846, 849-850 (3d. Cir. 2019) (unpublished) (acknowledging that three weeks between a protected activity and an adverse action is a short period). Accordingly, Plaintiff has sufficiently pled facts, at this stage, to establish a plausible claim for a causal connection between the March 29, 2024 litigation hold letter and his removal from the Roster. As such, Defendant's Motion to Dismiss Plaintiff's First Amendment retaliation claim, at Count II of the Amended Complaint, will be denied.

### D. Punitive Damages

Plaintiff concedes that punitive damages against Fayette County are not available. (ECF No. 28, at 7). Accordingly, Plaintiff's claims for punitive damages against Fayette County, will be dismissed.

### IV.   Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss will be granted in part and denied in part. Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claims, at Counts I and II of the Amended Complaint, will be denied. Defendants' Motion to Dismiss individual and official capacity claims against Defendant Aubele, will be granted. Defendant Aubele will be dismissed as a party. Defendants' Motion to Dismiss Plaintiff's ADEA and PHRA claims, at Counts III and IV, will be granted. Defendants' Motion to Dismiss Plaintiff's claims for punitive damages, will be granted.

DATED: October 10, 2025

Marilyn J. Horan
United States District Judge